# STATE OF MICHIGAN

# COURT OF APPEALS

MYRTLE FLOSSIE MOORE,

       Plaintiff-Appellant,

v

WILLIAM THOMAS SWAFFORD and COCA-COLA REFRESHMENTS USA, INC.,

       Defendants-Appellees.

UNPUBLISHED
June 16, 2016

No. 320246
Eaton Circuit Court
LC No. 12-000969-NI

Before: BORRELLO, P.J., and RONAYNE KRAUSE and RIORDAN, JJ.

RIORDAN, J. (*dissenting*).

I believe the trial court properly granted defendants' motion for summary disposition. Therefore, I respectfully dissent.

Plaintiff, born in 1938, has a lengthy medical history. She has a history of arthritis with chronic back pain, cancer of the spine, osteoarthritis, hiatal hernia, hypercholesteremia, hypertension, renal stones, anemia, diabetes, hypothyroidism, cataracts, and radiation and chemotherapy for bone cancer, colon cancer, liver cancer, and spinal cord cancer. Plaintiff also received medical treatment in 2006 for neck pain that radiated into her right shoulder, which included pain in the neck and right shoulder when she moved her right shoulder. As the majority concedes, plaintiff had a significant medical history showing multiple treatments and issues with her shoulder, back, and spine

At issue in this case is whether the plaintiff suffered a serious impairment as a result of the June 13, 2011 car accident. In that incident, plaintiff was rear-ended when stopped at a traffic light. Because her hands were on the steering wheel, she believed her shoulder probably twisted from the impact. However, she declined transport to the hospital after the accident.

After checking with her insurance agent, plaintiff went to the emergency room for shoulder pain. Her shoulder was x-rayed, although there was no swelling or bruising. She subsequently saw several doctors, including Dr. John Morgan, an orthopedic surgeon. She informed him that the pain in her right shoulder was caused by the accident. An MRI of her shoulder was taken, and demonstrated a 6-millimeter gap in the portion of her rotator cuff. Morgan concluded that she most likely tore her rotator cuff, even though the radiologist detected no evidence of a tear. Morgan diagnosed plaintiff with rotator cuff syndrome and shoulder impingement syndrome.

-1-

After continued treatment, including physical therapy and surgery, plaintiff initiated this instant action against defendants, seeking damages for noneconomic losses under the no-fault act. MCL 500.3135(1). Defendants eventually moved for summary disposition, contending that there was no genuine issue of material fact regarding whether plaintiff suffered a serious impairment of a body function under the no-fault act. The trial court granted defendants' motion, and plaintiff now appeals.

Under the no-fault act, MCL 500.3101 *et seq.*, tort liability for noneconomic loss is limited to cases in which a plaintiff "has suffered death, serious impairment of body function, or permanent serious disfigurement" that was "caused by [the] ownership, maintenance, or use of a motor vehicle." MCL 500.3135(1). A "serious impairment of body function" requires proof of: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010); MCL 500.3135(5). Courts may determine whether a person suffered a serious impairment of body function as a matter of law if (1) there is not a factual dispute concerning the nature and extent of the person's injuries, or (2) there is a factual dispute concerning the nature and extent of the person's injuries, but that dispute is not material to the determination of whether the person suffered a serious impairment of body function. MCL 500.3135(2)(a).

In the instant case, the trial court found that there was some factual dispute regarding the nature and extent of plaintiff's injuries. Nonetheless, it concluded that the dispute was not material to the determination of whether plaintiff suffered a serious impairment of a body function. In other words, the trial court concluded that any injury that may have incurred did not affect her general ability to live a normal life, which was the type of everyday living she had prior to the June 13, 2011 car accident.

The trial court did not err. Under *McCormick*, a plaintiff must show that an accident-related injury had "an influence on some of the person's capacity to live in his or her normal manner of living." 487 Mich at 202. This inquiry "necessarily requires a comparison of the plaintiff's life before and after the incident." *Id.* See also *Nelson v Dubose*, 291 Mich App 496, 499; 806 NW2d 333 (2011) ("[T]he plaintiff has to show that the plaintiff's ability to lead a normal life has been affected by comparing the plaintiff's life before and after the injury."). The *McCormick* Court noted three caveats: (1) the plaintiff's general ability to lead her pre-accident normal life need only be affected, not destroyed; (2) the focus is on whether the impairment affected the plaintiff's ability to maintain her normal manner of living, not whether some of her manner of living has itself been affected; and (3) the impairment need not be permanent. *Id.* at 202-203.

The plaintiff testified that after the accident, she was able to continue to live alone, even at her advanced age. No one came to live with her or to help with day-to-day activities. She continued to mow her lawn, cook, clean her own home, and sweep the floors. Some of her activities apparently were limited, such as washing walls, climbing ladders, carrying groceries, or holding her grandchildren. However, given plaintiff's advanced age and extensive medical history before the auto accident, which included pain in her knees, shoulders, and neck, it cannot be said that her life before the accident was more active, in any material way, than it was after

the incident.  See *Nelson*, 291 Mich App at 499.  Plaintiff also continued to drive, again at her advanced age, although not as frequently.

In summary, when viewing the facts in a light most favorable to plaintiff, the evidence before us does not establish a genuine issue of material fact that plaintiff's injuries affected her general ability to lead her normal life after the accident at issue.

Accordingly, I would find that the trial court properly granted summary disposition to defendants.  For these reasons, I dissent.


/s/ Michael J. Riordan